United States District Court
Southern District of Texas
**ENTERED**
September 30, 2021
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION**

| | | |
|---|---|---|
| **CANDELARIO HERNANDEZ** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 6:20-cv-00034** |
| | § | |
| **AARON KLOESEL, COREY FURR, GENE MILLER, JOHN CIRONE, MANUEL PERALTA, and ESMEREJILDO MORENO,** | § | |
| | § | |
| **Defendants.** | § | |

**MEMORANDUM OPINION AND ORDER**

Texas inmate Candelario Hernandez claims that the Defendant Aaron Kloesel, an officer in the Texas prison system, beat him so badly that it left him comatose and bleeding. Hernandez is suing Kloesel for violating his rights under the Eighth and Fourteenth Amendments to the United States Constitution. He is also suing Kloesel's superiors (Corey Furr, Gene Miller, John Cirone, Manuel Peralta, and Esmerejildo Moreno) for negligently supervising Kloesel. In addition, Hernandez alleges that Furr and Moreno conspired to conceal Kloesel's disciplinary record.

The Defendants filed Motions to Dismiss, asserting foremost that Hernandez failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. Hernandez counters that he was not required to exhaust his administrative remedies because he was in a coma and, as a result, unable to file a timely grievance. For the following reasons, the Court **GRANTS** the Motions as set forth herein

and **STAYS** this case for a period of sixty days to allow Hernandez to exhaust his administrative remedies.

## I. BACKGROUND AND PROCEDURAL HISTORY

Hernandez alleges the following relevant facts, which the Court assumes are true for purposes of this Motion. Kloesel has worked as an officer in the Texas prison system since at least 2010. (Dkt. No. 1 at ¶ 10). In August and September 2016, while working in the Connally Unit of the Texas Department of Criminal Justice ("TDCJ"), Kloesel committed violations of prison policies involving his handling of inmates, which resulted in his being placed on disciplinary probation.[1] (*Id.* at ¶¶ 10–17). Kloesel was transferred to the Stevenson Unit where he committed another violation involving an inmate in August 2019, and he was placed on disciplinary probation for a second time. (*Id.* at ¶¶ 10, 18–24).[2]

On November 4, 2019, while incarcerated in the Stevenson Unit, Hernandez sought medical attention for an arm injury. (*Id.* at ¶ 25). When he approached the medical unit, Kloesel, who was standing at the door, told him to return to his cell. (*Id.*). Hernandez explained to Kloesel that he needed medical treatment and had arrived at the appropriate time to receive care. (*Id.*). Despite this explanation, Kloesel insisted that Hernandez return to his cell. (*Id.*). Hernandez refused to leave the medical unit; instead,

---

[1] Defendant Peralta was the warden in the Connally Unit when Kloesel committed those violations. (*Id.* at ¶ 43). Defendants Cirone and Mille confronted Kloesel about the violations prior to him being transferred to the Stevenson Unit. (*Id.* at ¶¶ 12–17).

[2] Defendant Moreno, who was a captain in the Stevenson Unit, investigated this incident, and Defendant Furr was the Stevenson Unit's warden at the time it occurred. (Id. at ¶ 23).

he placed his foot at the bottom of the door to prevent it from closing and tried to persuade Kloesel to allow him to get treatment. (*Id.*). In response, Kloesel threw Hernandez to the ground, knocking him unconscious. (*Id.*). Medical personnel later determined that Hernandez was comatose. (*Id.* at ¶ 28). He had sustained life-threatening injuries to his head and had to be airlifted to Brook Army Medical Center in San Antonio for treatment. (*Id.* at ¶¶ 29, 32).

At present, Hernandez is incarcerated in the Carol Young Medical Facility of the TDCJ. (*Id.* at ¶ 3). He is no longer in a coma, but he suffers from permanent cognitive disability, permanent memory and vision impairment, paralysis on the left side of his body, and is unable to walk. He is so incapacitated that he wears diapers. (*Id.* at ¶¶ 32–33).

Hernandez did not file a grievance in accordance with TDCJ procedures for the harm he sustained on November 4, 2019. (*Id.* at ¶ 50). Hernandez alleges he was incapable of filing a grievance because of his injuries. (*Id.*). Hernandez did, however, file the present action against the Defendants on May 28, 2020.

In his three-count Complaint, Hernandez claims he is entitled to damages under 42 U.S.C. § 1983 for the Defendants' violations of his rights secured by the Eighth and Fourteenth Amendments. (*Id.* at ¶¶ 36–39). First, Hernandez asserts that Kloesel used excessive force when he threw him to the ground. (*Id.* at ¶¶ 36–39). Second, Hernandez asserts that Furr, Moreno, Peralta, Miller, and Cirone were deliberately indifferent to his safety by failing to adequately supervise Kloesel. (*Id.* at ¶¶ 40–48). Last, Hernandez asserts that Furr and Moreno conspired to conceal Kloesel's disciplinary record. (*Id.* at

¶ 49). This alleged conspiracy resulted in Kloesel remaining employed with the TDCJ, which provided him with the opportunity harm Hernandez. (*Id.*)

Furr, Moreno, Peralta, Miller, and Cirone filed a Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure and subsequently supplemented that Motion. (Dkt. No. 13); (Dkt. No. 22). Kloesel filed a separate 12(b)(6) Motion to Dismiss. (Dkt. No. 18). In their Motions, the Defendants argue that Hernandez's Complaint must be dismissed because he failed to exhaust his administrative remedies under the PLRA. (Dkt. No. 18, 22). Hernandez filed a Response to both Motions. (Dkt. No. 24). Hernandez admits that he failed to file a grievance against any of the Defendants under TDCJ procedures to redress the harm he sustained on November 4, 2019. (*Id.* at ¶ 50). Hernandez states that he "was assaulted into a coma, preventing him from any ability to file a grievance[.]" (*Id.*).

## II. DISCUSSION

### A. MOTION TO DISMISS COMPLAINT FOR HERNANDEZ'S FAILURE TO EXHAUST HIS ADMINISTRATIVE REMEDIES

#### 1. Applicable Law

The Defendants move to dismiss Hernandez's Complaint under Rule 12(b)(6) for Hernandez's failure to exhaust administrative remedies. Rule 12(b)(6) permits a defendant to move to dismiss for "failure to state a claim upon which relief may be granted." Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although "the pleading standard Rule 8 announces does not require detailed factual allegations," it demands more than labels and conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct.

1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) (internal quotations omitted)).

In reviewing a 12(b)(6) motion to dismiss, a court must accept the plaintiff's factual allegations as true and view them in the light most favorable to the plaintiff. *Mitchell v. McBryde*, 944 F.2d 229, 230 (5th Cir. 1991). "The court does not look beyond the face of the pleadings in determining whether the plaintiff has stated a claim under Rule 12(b)(6)." *Rivera v. Harris County*, No. 4:19-CV-4920, 2020 WL 3871457, at *3 (S.D. Tex. July 9, 2020) (citing *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999)). Review is limited to the complaint's allegations and to the documents attached to a defendant's motion to dismiss to the extent those documents are referred to in the complaint and are central to the claims. *See Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

A district court can dismiss an inmate's complaint for failure to state a claim if that inmate failed to exhaust his administrative remedies in accordance with the PLRA. *Jones v. Bock*, 549 U.S. 199, 216, 127 S.Ct. 910, 921, 166 L.Ed.2d 798 (2007). Moreover, "if the complaint itself makes clear that the prisoner failed to exhaust," then the court can dismiss it. *See Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir. 2007); *see also Torns v. Mississippi Dep't of Corr.*, 301 F. App'x 386, 388 (5th Cir. 2008) (per curiam) (stating that a court may *sua sponte* dismiss an inmate's complaint for failure to state a claim when the complaint "alleges facts that clearly foreclose exhaustion"). However, "failure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216, 127 S.Ct. at 921.

To comply with the PLRA's exhaustion requirement, an inmate must "exhaust such administrative remedies as are available before bringing suit to challenge prison conditions." *Ross v. Blake*, 578 U.S. 632, ___, 136 S.Ct. 1850, 1854–55, 195 L.Ed.2d 117 (2016) (internal quotation marks omitted). However, a "prisoner need not exhaust remedies if they are not 'available.'" *Id.* at ___, 136 S.Ct. at 1855.

Specifically, the PLRA provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In interpreting this statutory provision, the Supreme Court has observed:

> [The] mandatory language [in Section 1997e(a)] means a court may not excuse a failure to exhaust, even to take such circumstances into account. . . . No doubt, judge-made exhaustion doctrines, even if flatly stated at first, remain amenable to judge-made exceptions. . . . But a statutory exhaustion provision stands on a different footing. There, Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to. For that reason, mandatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.

*Ross*, 578 U.S. at ___, 136 S.Ct. at 1856–57.

Yet, the absence of a "special circumstances exception" does not end a court's inquiry as to whether a plaintiff has satisfactorily exhausted his administrative remedies "because the PLRA contains its own, textual exception to mandatory exhaustion." *Id.* at ___, 136 S.Ct. at 1858. Indeed, the PLRA's "exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available

remedies, but need not exhaust unavailable ones." *Id.* Moreover, "the ordinary meaning of the word "available" is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained. . . .' Accordingly, an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at ___, 136 S.Ct. at 1858–59 (citations omitted).

In *Ross,* the Supreme Court described "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at ___, 136 S.Ct. at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* (citing *Booth v. Churner*, 532 U.S. 731, 736, 738, 121 S.Ct. 1819, 1822, 1824, 149 L.Ed.2d 958 (2001)). Second, an administrative procedure is unavailable when it is "so opaque that it becomes, practically speaking, incapable of use." *Id.* at ___, 136 S.Ct. at 1859–60. Third, an administrative procedure is unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at ___, 136 S.Ct. at 1860.

Administrative remedies are available to Texas prisoners through the Texas prison system's formal grievance process, which the Fifth Circuit has described as a "detailed, complex and carefully thought-out program to facilitate the filing of grievances and assure their prompt, dispassionate investigation." *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). This process encompasses two steps:

> The Step 1 grievance, which must be filed within fifteen days of the complained-of incident, is handled within the prisoner's facility. After an adverse decision at Step 1, the prisoner has ten days to file a Step 2 grievance, which is handled at the state level. . . . [A] prisoner must pursue a grievance through both steps for it to be considered exhausted.

*Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004); *see also Young v. Davis*, No. 4:18-CV-00005, 2019 WL 5071742, at *2 (S.D. Tex. Apr. 18, 2019).

The Fifth Circuit has adopted a "strict approach" of determining whether an inmate has exhausted the procedures in the Texas prison system's grievance process. *Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010). Under this approach, "mere substantial compliance with administrative remedy procedures does not satisfy exhaustion . . . ." *Id.* (internal quotation omitted). The Fifth Circuit has recognized, however, that "administrative remedies are deemed unavailable when (1) an inmate's untimely filing of a grievance is because of a physical injury and (2) the grievance system rejects the inmate's subsequent attempt to exhaust his remedies based on the untimely filing of the grievance." *Days v. Johnson*, 322 F.3d 863, 868 (5th Cir. 2003) (per curiam), *overruled by implication on other grounds by Jones*, 549 U.S. at 214–16, 127 S.Ct. at 920–21.[3]

---

[3] The Fifth Circuit "emphasize[d] that [its] holding [in *Days* was] limited to the narrow facts of [that] case." *Days*, 322 F.3d at 868. However, the Fifth Circuit and this Court have applied the holding in *Days* multiple times. *See, e.g.*, *Parker v. Adjetey*, 89 F. App'x 886, 887–88 (5th Cir. 2004) (per curiam); *Johnson v. Thaler*, No. 6:10-CV-025, 2012 WL 1202138, at *5–6 (S.D. Tex. Apr. 9, 2012), *aff'd*, 507 F. App'x 370 (5th Cir. 2013) (per curiam); *Washington v. Tex. Dep't of Crim. Just.*, No. 2:05-CV-00011, 2006 WL 3245741, at *4–5 (S.D. Tex. Nov. 5, 2006). Moreover, the facts of this case, in which Hernandez claims he was unable to file a grievance due to a physical injury, are similar to those in *Days*. *See Days*, 322 F.3d at 864–68.

**2. Analysis**

Turning to this case, Hernandez had until November 19, 2019, to file his Step 1 grievance for the incident involving Kloesel that occurred on November 4, 2019.[4] *See Johnson*, 385 F.3d at 515 (stating that an inmate has fifteen days from the date on which an incident occurred to file a Step 1 grievance); *see also Young*, 2019 WL 5071742, at *2 (same). Hernandez concedes that he never filed a grievance because he "was assaulted into a coma, preventing him from any ability to file . . . ." (Dkt. No. 1 at ¶ 50).

In his Response, Hernandez contends that he is not required to exhaust his administrative remedies because he was in a coma, and this prevented him from filing a grievance prior to the November 19, 2019 deadline. In essence, Hernandez asserts that the grievance process was unavailable to him because he was physically unable to file a timely grievance. This assertion, however, contradicts Fifth Circuit precedent.

When an inmate alleges that he was unable to file a grievance due to an injury, a court must undertake the following inquiry to determine whether administrative remedies were unavailable to the inmate. First, the court must determine whether the injury prevented the plaintiff from filing a timely grievance. *See Ferrington v. La. Dep't. of Corr.*, 315 F.3d 529, 532 (5th Cir. 2002) (holding that the plaintiff's alleged blindness did not prevent him from filing a timely grievance). If so, the court must then determine whether the inmate filed an untimely grievance when he was capable of submitting one. *See Washington v. Tex. Dep't of Crim. Just.*, No. 2:05-CV-11, 2006 WL 3245741, at *4–5 (S.D.

---

[4] Hernandez admits in his Response that he had until November 19, 2019, to file a Step 1 grievance for the incident with Kloesel that occurred on November 4, 2019. (Dkt. No. 24 at 10).

Tex. Nov. 5, 2006). Finally, if the inmate filed an untimely grievance, the court must assess whether "the grievance system reject[ed] the inmate's subsequent attempt to exhaust his remedies based on the untimely filing of the grievance." *Days*, 322 F.3d at 868. If any one of these conditions is not satisfied, a court can dismiss the inmate's complaint. *See Washington*, 2006 WL 3245741, at *4–5 (dismissing without prejudice the inmate's complaint for failing to file an untimely grievance when the inmate's physical condition permitted him to file one).

*Washington v. Tex. Dep't of Crim. Just.*, is instructive. In *Washington*, three inmates attacked the plaintiff at a Texas prison facility, which resulted in his hospitalization. *Id.* at *1. The plaintiff sued prison officials for failing to adequately supervise the area in which the attack occurred. *Id.* Prior to bringing his lawsuit, "[i]t [was] undisputed that [the plaintiff] did not file either a Step 1 or Step 2 administrative grievance with the TDCJ." *Id.* at *2. The "Plaintiff argue[d], however, that he was physically unable to exhaust and that his failure should therefore be excused." *Id.* The court, citing the Fifth Circuit's decision in *Days*, held that the plaintiff had failed to exhaust his administrative remedies because, even though his physical injury prevented him from filing a timely grievance, he never filed a grievance *prior to initiating his suit*, and "there [was] nothing to suggest that his medical condition *continued to prevent him* from filing his grievance." *Id.* at *5 (emphasis added).

Here, Hernandez did not file a grievance prior to initiating this lawsuit against the Defendants because he was comatose for some period after his encounter with Kloesel. (Dkt. No. 1 at ¶ 50). Assuming Hernandez was comatose and was thus unable to file a

timely grievance, there are no allegations in the Complaint suggesting he could not have filed a grievance sometime *after* November 19, 2019, when he was no longer comatose.[5]

Moreover, Hernandez filed this lawsuit on May 28, 2020. Of course, if Hernandez could file a lawsuit on May 28, 2020, he could have filed an untimely grievance against the Defendants on that date. *See Ferrington,* 315 F.3d at 532 (holding that the plaintiff's alleged blindness did not prevent him from filing a grievance, in part, because it "clearly did not prevent him from filing a § 1983 action"); *Brown v. HG Faculty*, No. 3:15-CV-0178, 2018 WL 2388575, at *3–4 (S.D. Tex. May 25, 2018) (holding that an inmate who claimed she could not file a timely grievance because she was "mostly sedated" had not exhausted her administrative remedies because she filed a grievance on an unrelated matter during the time period she claimed she was incapacitated). Yet, Hernandez never filed a grievance. (Dkt. No. 1 at ¶ 50). Therefore, accepting the facts alleged in the Complaint as true and construing them in the light most favorable to Hernandez, the Court concludes that Hernandez failed to exhaust his administrative remedies under the PLRA.[6]

---

[5] The facts of *Parker*, 89 F. App'x at 887–88, are similar to those of this case. In *Parker*, the inmate asserted that he was excused from the PLRA's exhaustion requirement because the fifteen-day deadline to file a Step 1 grievance had expired while he was comatose and hospitalized. *Id.* at 887. The Fifth Circuit, citing its decision in *Days*, concluded that the inmate had not exhausted his administrative remedies because he did not attempt to file an untimely grievance after being discharged from the hospital. *See id.* 887–88.

[6] Furr, Moreno, Peralta, Miller, and Cirone raise three alternative grounds for dismissal in their Motion to Dismiss. (Dkt. No. 13). First, they assert that Hernandez's claims against the Defendants responsible for supervising Kloesel while he worked in the Connally Unit are barred by the two-year statute of limitations. (*Id.* at 2). Second, they argue that Hernandez failed to set forth sufficient facts to support his supervisory liability and conspiracy claims. (*Id.* at 3–9). Third, they contend that they are entitled to qualified immunity. (*Id.* at 7–8). Because the issue of

(continue)

## III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Defendants' Motions to Dismiss, (Dkt. No. 13) (Dkt. No. 18), as set forth herein. The Court **STAYS** this case for a period of sixty days from the date of this Order so that Hernandez may exhaust his administrative remedies. The Court directs the Parties to file a joint notice, at the conclusion of those sixty days, indicating whether administrative remedies have been exhausted.

It is SO ORDERED.

Signed on September 29, 2021.

**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**

---

exhaustion is dispositive, the Court does not need to address these alternative grounds for dismissal until Hernandez exhausts his administrative remedies. *See Brown*, 2018 WL 2388575, at *4 (determining that it is unnecessary to address other grounds raised supporting dismissal, including qualified immunity, if the plaintiff failed to exhaust her administrative remedies); *Amir-Sharif v. Gonzalez*, No. 3:06-CV-2269, 2007 WL 9757560, at *1 (N.D. Tex. Apr. 30, 2007).