UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| **CANDELARIO HERNANDEZ,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | Civil Action No. 6:20-CV-00034 |
| | § | |
| **AARON KLOESEL, COREY FURR,** | § | |
| **GENE MILLER, JOHN CIRONE,** | § | |
| **MANUEL PERALTA, and** | § | |
| **ESMEREJILDO MORENO,** | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM OPINION AND ORDER

Texas inmate Candelario Hernandez claims that Defendant Aaron Kloesel, an officer in the Texas prison system, beat him so badly that he was left comatose and bleeding. He further claims that his injuries were such that he had to be airlifted for medical treatment. Hernandez states that now he cannot walk and suffers from permanent cognitive disability, memory and vision impairment, and paralysis on the left side of his body. He is suing Kloesel for violating his rights under the Eighth and Fourteenth Amendments to the United States Constitution. He is also suing Kloesel's superiors—Corey Furr, Gene Miller, John Cirone, Manuel Peralta, and Esmerejildo Moreno—for negligently supervising Kloesel. In addition, Hernandez alleges that Furr and Moreno conspired to conceal Kloesel's disciplinary record.

Defendants have filed a Motion for Summary Judgment, (Dkt. No. 54), asserting that (1) administrative remedies were available to Hernandez, and (2) Hernandez failed

to exhaust those administrative remedies as required, regardless of whether the exhaustion would have been timely or untimely.   Hernandez counters that the administrative remedies were unavailable to him for two reasons.   First, Hernandez asserts that the physical injuries he suffered made it impossible for him to file a timely grievance.   Second, Hernandez asserts that under the circumstances, he was not required to file an untimely grievance as a matter of law.   For the following reasons, the Court **DENIES** Defendants' Motion for Summary Judgment.

## I.      BACKGROUND

Hernandez alleges the following relevant facts.[1]   On November 4, 2019, while incarcerated in the Stevenson Unit of the Texas Department of Criminal Justice ("TDCJ"), Hernandez sought medical attention for an arm injury.   (Dkt. No. 1 at 7).   When Hernandez approached the medical unit, Kloesel, who was standing at the door, told him to return to his cell.   (*Id.*).   Hernandez explained to Kloesel that he "was in serious need" of medical treatment and had arrived at the appropriate time to receive care.   (*Id.*).   Despite this explanation, Kloesel aggressively insisted that Hernandez return to his cell.   (*Id.*).   Hernandez refused to leave the medical unit; instead, he placed his foot at the bottom of the door to prevent it from closing and tried to persuade Kloesel to allow him to get treatment.   (*Id.*).   In response, Kloesel threw Hernandez to the ground, knocking him briefly unconscious.   (*Id.*).   Kloesel then placed his knee on Hernandez's neck and attempted to handcuff him.   (*Id.*).   Despite Hernandez's state and visible evidence of a

---

[1]     For purposes of this Motion, the Court views the evidence in the light most favorable to Hernandez.  *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

serious injury, Kloesel forcibly handcuffed Hernandez without calling for medical
assistance.  (*Id.*).  As he was being handcuffed, Hernandez experiences seizures.  (*Id.*).
Another officer observed Kloesel's actions and yelled at him to stop.  (*Id.* at 8).

When medical personnel later arrived, they found Hernandez face down on the
ground, unresponsive and ultimately determined that Hernandez was comatose.  (*Id.*).
He sustained life-threatening injuries to his head and had to be airlifted to Brooke Army
Medical Center in San Antonio for treatment.  (*Id.* at 8–9).  On November 18, 2019,
Hernandez was transferred to UTMB, a TDCJ facility.  (Dkt. No. 64 at 20).  It is unclear
exactly when Hernandez emerged from the coma.  (*Id.* at 8–9).

At present, Hernandez is incarcerated in the Carol Young Medical Facility of the
TDCJ.  (Dkt. No. 1 at 2).  He is no longer in a coma, but he suffers from a variety of
disabling conditions including permanent cognitive disability, permanent memory and
vision impairment, paralysis on the left side of his body, and the inability to walk.  (*Id.* at
9).

## II.    PROCEDURAL HISTORY

Hernandez did not file a grievance in accordance with TDCJ procedures for the
harm he sustained on November 4, 2019.  (*Id.* at 16).  The deadline to file a grievance in
this case was November 19, 2019.  (Dkt. No. 64 at 9).  Hernandez missed that deadline.
(*Id.*).  Consequently, Defendants Furr, Moreno, Peralta, Miller, and Cirone filed a Motion
to Dismiss for failure to exhaust administrative remedies, (Dkt. No. 13); (Dkt. No. 22),
and Defendant Kloesel filed a separate Motion to Dismiss on the same ground.  (Dkt. No.
18).  On September 29, 2021, the Court (1) granted the Defendants' Motions to Dismiss,

(2) stayed the case for a period of 60 days to allow Hernandez to exhaust his administrative remedies, and (3) directed the Parties to file a joint notice after 60 days on this issue of exhaustion.  (Dkt. No. 49).

On October 27, 2021, the Parties filed a Joint Notice on Exhaustion.  (Dkt. No. 52).  According to the Joint Notice, Hernandez's Step 1 grievance was filed on September 30, 2021, and denied on October 4, 2021, as untimely.  (*Id.* at 1).  Moreover, the Joint Notice stated that Hernandez's Step 2 grievance was filed on October 13, 2021, and similarly denied on October 14, 2021, as untimely.  (*Id.*).

On December 15, 2021, the Court *sua sponte* withdrew its prior Memorandum Opinion and Order.  (Dkt. No. 53).  The Court maintained that Hernandez's failure to exhaust was clear on the face of his complaint but found that whether administrative remedies were available was unclear.  (*Id.* at 4).  The Court ordered the Parties to conduct limited discovery on the availability of administrative remedies, after which the Court would consider a motion for summary judgment solely on the exhaustion issue.  (*Id.* at 4–5).

Pending before the Court is Defendants' Motion for Summary Judgment on the sole issue of whether administrative remedies were available to Hernandez.  (Dkt. No. 54).

III.   **LEGAL STANDARD**

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A material fact is one that might affect the outcome of the suit under governing

law," and "a fact issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 611 (5th Cir. 2018) (internal quotation marks and citations omitted).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying the record evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).  "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).

If the movant meets this burden, the nonmovant must then come forward with specific facts showing there is a genuine issue for trial.  Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).  The nonmovant must "go beyond the pleadings and by [the nonmovant's] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (citation omitted).  "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 378 (5th Cir. 2019) (citation omitted).  The nonmovant's burden "will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d

536, 540 (5th Cir. 2005) (quoting *Little*, 37 F.3d at 1075).  But the district court must view

the evidence in the light most favorable to the nonmovant and draws all reasonable

inferences in the nonmovant's favor.  *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533

(5th Cir. 1997).

## IV.    DISCUSSION

In their Motion for Summary Judgment, Defendants argue that administrative

remedies were "available to [Hernandez] throughout the 6-month period between his

injury and his lawsuit," and that Hernandez was "physically capable of exhausting those

remedies" yet failed to do so.  (Dkt. No. 54 at 7–8).  Defendants argue that administrative

remedies are available to Texas inmates through the TDCJ's two-step grievance process,

and medical conditions affecting capabilities do not entirely excuse a plaintiff from

exhausting such administrative remedies.  (*Id.* at 3–4).  Moreover, Defendants argue that

even if Hernandez was physically incapable of filing a timely grievance, an untimely

grievance does not render the administrative remedies unavailable, "thus excusing the

exhaustion requirement."  (*Id.* at 5).  Defendants provide summary-judgment evidence

demonstrating that inmates hospitalized at TDCJ facilities have access to TDCJ grievance

officials who, if needed, can "assist and accommodate inmates" who may have

"communication issues" when requested.  (*Id.* at 6).  Defendants point to Hernandez's

two refusals to participate in physical therapy and a medical assessment indicating that

Hernandez was "awake, alert and oriented to person, place and time," to demonstrate

that Hernandez was "capable of submitting a readily available grievance."  (*Id.* at 7).

In his response, Hernandez argues that he was not required to file a grievance because administrative remedies were unavailable to him as a result of the injuries he sustained. (Dkt. No. 64 at 4). First, Hernandez argues that he could not have timely filed a grievance because (1) he was in a coma and had suffered a severe traumatic brain injury, (*id.* at 18–19), (2) he was not initially hospitalized at a TDCJ facility with access to TDCJ grievance officials, (*id.* at 19), and (3) his family members and lawyers were prohibited from filing a grievance on his behalf, (*id.* at 7). Second, Hernandez argues that the summary judgment evidence Defendants rely on to establish that Hernandez was physically capable of filing a grievance is insufficient because it does not address Hernandez's capacity to file a grievance. (*Id.* at 21–22). Third, Hernandez argues that he was not required to file an untimely grievance because (1) the TDCJ Offender Grievance Manual itself prohibits any exceptions to the fifteen-day filing deadline for a grievance related to the use of excessive force, (*id.* at 21), and (2) even if any exceptions to the fifteen-day filing deadline existed, that information is not documented anywhere, (*id.*). Finally, Hernandez argues that because the filing of an untimely grievance, whether in November of 2019 (at the time of the incident) or in September of 2021 (when he filed the grievance), would result in the same conclusion, the administrative remedies are a "dead end," and thus unavailable. (*Id.* at 22).

### A.   ADMINISTRATIVE REMEDIES IN TEXAS UNDER THE PRISON LITIGATION REFORM ACT

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other

Federal law, by a prisoner confined in any jail, prison, or other correctional facility until

such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "[T]o

properly exhaust administrative remedies prisoners must 'complete the administrative

review process in accordance with the applicable procedural rules,'" as defined "by the

prison grievance process itself."  *Jones v. Bock*, 549 U.S. 199, 218, 127 S.Ct. 910, 922, 166

L.Ed.2d 798 (2007) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88, 126 S.Ct. 2378, 2384, 165

L.Ed.2d 368 (2006)).

In Texas, to exhaust administrative remedies, prisoners must comply with the

Texas prison system's formal grievance process, which encompasses two steps:

> The Step 1 grievance, which must be filed within fifteen days
> of the complained-of incident, is handled within the
> prisoner's facility. After an adverse decision at Step 1, the
> prisoner has ten days to file a Step 2 grievance, which is
> handled at the state level. . . . [A] prisoner must pursue a
> grievance through both steps for it to be considered
> exhausted.

*Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004).  The Fifth Circuit has adopted a "strict

approach" of determining whether an inmate has exhausted these procedures.  *Dillon v.

Rogers*, 596 F.3d 260, 268 (5th Cir. 2010).  Under this approach, "mere 'substantial

compliance' with administrative remedy procedures does not satisfy exhaustion[.]"  *Id.*

(quoting *Wright v. Hollingsworth*, 260 F.3d 357, 358, (5th Cir. 2001)).

B.    EXCEPTIONS TO EXHAUSTION

The Supreme Court of the United States has repeatedly held that there is no

"'special circumstances' excuse for non-exhaustion" under the PLRA.  *Ross v. Blake*, 578

U.S. 632, 640, 136 S.Ct. 1850, 1857, 195 L.Ed.2d 117 (2016); *see also Booth v. Churner*, 532

U.S. 731, 736–41, 121 S.Ct. 1819, 1823–25, 149 L.Ed.2d 958 (2001) (rejecting an exception where the administrative process does not provide the relief specifically requested by the prisoner); *Porter v. Nussle*, 534 U.S. 516, 520, 122 S.Ct. 983, 986, 152 L.Ed.2d 12 (2002) (rejecting a proposal to carve out excessive-force claims from the PLRA's exhaustion regime); *Woodford,* 548 U.S. at 91 n.2, 126 S.Ct. at 2386 n.2 (rejecting an exception for constitutional claims).

However, the plain text of Section 1997e(a) contains a statutory exception to the mandatory exhaustion rule.  42 U.S.C. § 1997e(a) ("[n]o action shall be brought . . . until such administrative remedies as are *available* are exhausted.") (emphasis added); *see also Ross*, 578 U.S. at 635–36, 136 S.Ct. at 1855 ("But we also underscore that statute's built-in exception to the exhaustion requirement[.]").  "Under § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones."  *Ross*, 578 U.S. at 642, 136 S.Ct. at 1858 (alternation in original).  Moreover, "the ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'"  *Id.* at 642, 136 S.Ct. at 1859.  "Accordingly, an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'"  *Id.*

In *Ross*, the Supreme Court described "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief."  *Id.* at 643, 136 S.Ct. at 1859.  First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a

simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, an administrative procedure is unavailable when it is "so opaque that it becomes, practically speaking, incapable of use." *Id.* Third, an administrative procedure is unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644, 136 S.Ct. at 1860.

The Fifth Circuit has recognized a framework for determining the availability of administrative remedies that fits under the Supreme Court's dead end exception. The Fifth Circuit's framework states that "administrative remedies are deemed unavailable when (1) an inmate's untimely filing of a grievance is because of a physical injury and (2) the grievance system rejects the inmate's subsequent attempt to exhaust his remedies based on the untimely filing of the grievance." *Days v. Johnson*, 322 F.3d 863, 868 (5th Cir. 2003) (per curiam), *overruled by implication on other grounds by Jones*, 549 U.S. at 214–16, 127 S.Ct. at 920–21. This Court will analyze Hernandez's claim under the Fifth Circuit's framework.

### 1.   Hernandez's Physical Injury and Filing a Timely Grievance

The Court finds that due to Hernandez's physical injury, he was unable to timely file his Step 1 grievance. Hernandez had until November 19, 2019, to timely file his Step 1 grievance. (Dkt. No. 64 at 9). The summary-judgment evidence does not establish when Hernandez came out of the coma conclusively, or when he regained the mental capacity to file his Step 1 grievance. For example, the evidence shows that from November 4, 2019, the date of the incident, to November 18, 2019, Hernandez was hospitalized at the Brooke

10

Army Medical Center in San Antonio, Texas, a non-TDCJ hospital.  (Dkt. No. 1 at 8–9).

On November 18, 2019, Hernandez was transferred to UTMB, a TDCJ facility.  (Dkt. No.

64 at 20).  Hernandez asserts that he was "completely unresponsive" while hospitalized

at Brooke Army Medical Center, and he only started to communicate after he was moved

to UTMB.  (*Id.* at 8–9).  The earliest date Defendants point to for when Hernandez came

out of the coma and regained capacity is November 27, 2019, eight days after Hernandez's

Step 1 grievance was due.  (Dkt. No. 54 at 7).  Moreover, Hernandez argues that the

summary judgment evidence upon which Defendants does not address his ability or

capacity to file a grievance.  (Dkt. No. 64 at 21–22).

The determination of when exactly Hernandez came out of the coma and regained

mental capacity is an unresolved question of fact.  However, this question of fact is not

material because regardless of when that exact date was, it is undisputed that it occurred

after November 19, 2019, the deadline to submit his Step 1 grievance.  Therefore, due to

Hernandez's physical injury, he was unable to timely file his Step 1 grievance.

### 2. Hernandez's Subsequent Attempt to Exhaust His Administrative Remedies

The Court holds that there is a genuine issue of material fact as to whether a Step

1 grievance filed promptly after the submission deadline would have been processed by

the TDCJ.  The summary-judgment evidence indicates that Hernandez's Step 1 grievance

was filed on September 30, 2021, and denied on October 4, 2021, as untimely, and

Hernandez's Step 2 grievance was filed on October 13, 2021, and similarly denied on

October 14, 2021, as untimely.  (Dkt. No. 52 at 1).  Therefore, it is undisputed that

Hernandez's subsequent attempt to exhaust his remedies was rejected based on untimely filing.

However, it is unclear whether the analysis on this prong ends here. The Court recognizes that a significant amount of time has lapsed since the November 19, 2019 deadline.[2] Whether Hernandez was required to file his untimely Step 1 grievance sooner than when he did on September 30, 2021 is unclear. The Parties did not provide, nor was this Court able to find, any precedent that demonstrates the permissible amount of time within which an inmate is required to file his or her *untimely* Step 1 grievance. Instead, the Court found a Second Circuit case that held an inmate's one-year delay in filing his grievance due to his hospitalization was not untimely. *Rucker v. Giffen*, 997 F.3d 88, 94 (2d. Cir. 2021). The Second Circuit reasoned that "[t]he grievance procedures in place at the prison would not have considered [the inmate's] grievance to be timely—and would not have entertained his complaints—even if the grievance had been filed more promptly following [his] return from the hospital." *Id.* The Second Circuit's reasoning relied on whether the prison system entertains untimely grievances. *Id.*

While this reasoning has not yet been applied by other courts, the Court finds it persuasive. The Second Circuit's reasoning falls squarely within the first definition of "unavailable" as articulated by the Supreme Court in *Ross v. Blake*. *Ross*, 578 U.S. at 643, 136 S.Ct. at 1859 ("[A]n administrative procedure is unavailable when (despite what

---

[2]    Establishing when Hernandez regained the mental capacity needed to file a Step 1 grievance would be necessary to determine how much time has elapsed from then to September 30, 2021, when the Step 1 grievance was filed.

regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates."). If a prison system does not entertain grievances filed after the deadline, regardless of whether they are promptly filed thereafter or delayed, the administrative procedure is a dead end.

In this case, whether the TDCJ reviewing officer would have processed Hernandez's promptly filed untimely grievance is a disputed question of fact. Hernandez presents summary-judgment evidence showing that the reviewing officers may not use any discretion to process untimely grievances because the TDCJ Offender Grievance Manual prohibits any exceptions to the fifteen-day filing deadline for a grievance related to the use of excessive force. (Dkt. No. 64 at 21). This is contradicted by the deposition testimony of Jessica Riley, a TDCJ employee, who stated that reviewing officers have discretion to process untimely grievances. (Dkt. No. 54-1 at 1, 24–29). The Court finds that there is a genuine issue of material fact as to whether a grievance filed promptly after the submission deadline would have been processed by the TDCJ. Therefore, summary judgment is not appropriate in this case.

## V.   CONCLUSION

For the foregoing reasons, the Court **DENIES** the Defendants' Motion for Summary Judgment, (Dkt. No. 54).

It is SO ORDERED.

13

Signed on February 26, 2023.

_____

**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**